Next matter, case number 15-2553, Edward Broden v. N&D Transportation Co., et al. Ms. Brennan, good morning, good afternoon. Good afternoon, Mr. Higgins. I would like to reserve three minutes for the bottle, please. You may. I am Melissa Brennan, and I represent the appellant in this matter, which is the New England Teamsters and Trucking Industry Pension Fund. And this is a case about the collection of withdrawal liability under ERISA, and it has two elements, subject matter jurisdiction as well as failure to state a claim. I'd like to address the subject matter jurisdiction first. We believe that the facts of this case are distinguishable from the U.S. Supreme Court case Peacock v. Thomas, and there's several reasons behind that. Although Peacock v. Thomas was an ERISA case, it was actually a second case in that matter. The first case happened about six years prior to this, and Mr. Peacock was a part of that case and was found not liable for that judgment because Mr. Peacock was not a plain fiduciary as described under ERISA. So when Mr. Thomas got the judgment, Mr. Peacock was free from that judgment. Then based on facts that happened four or five years later, Mr. Thomas then sued Mr. Peacock again, and the U.S. Supreme Court found that you cannot hold someone responsible for a judgment that they are not liable for. And in this case, we're trying to hold an alter ego liable who is the exact same company as the one who the judgment is against. DNN Transportation Company and NND Transportation Company are essentially alter egos, parallel companies, as described in this court in Mass Cavernous v. Beaumont. They have family members that are the owners. They worked out of the same building. They did the same, performed the same transportation. They have the same phone number. They shared utility bills. They were on joint sales calls. They shortened shares policies. And all of these facts that we put into our brief came out after we got the initial judgment because the judgment was a default judgment, and we were unable to ascertain any of these facts until we did post-judgment discovery. So looking at the facts in Peacock versus the facts here, this is a company that is liable for the underlying judgment. Unlike Mr. Peacock, who had no business being brought into the second time because he was not liable for that first judgment in the first case. If we had been able to bring NND in initially, subject matter jurisdiction, it wouldn't be an issue. But we believe that there is a federal law of alter ego that you can bring the doctrine of ERISA and the alter ego doctrine in ERISA as a federal common law claim, that we don't need an underlying issue to say that we need a direct violation. So the district court said that. I'm not sure what label would you give to the subject matter jurisdiction? Is this a form of ancillary jurisdiction? Is it a new cause of action? No, I believe it's a federal question jurisdiction based on the law of ERISA because we're saying that NND, the second company, is an employer under ERISA and that they also failed to pay the withdrawal liability, which is a claim under ERISA under 4301B. So we're just saying that this is a typical ERISA claim and we're bringing in a second company and the reason why the second company is liable as an employer is because they are an alter ego. And we put the facts in the complaint that show they're an alter ego and we went down the list from Mass Caverns v. Belmont to show commonality of employees, commonality of owners, commonality of what they do, where they were, and we put all those facts in the complaint. But with subject matter jurisdiction, you're also allowed to bring in facts outside of the complaint, which we also did in the district court level. So it's a new claim, but your argument is they are subject to the very same default judgment that you got in that earlier action. Is that your position? Yes. Because they're the same company. That's your position. Exactly. So in this court's decision in Futura, which the district court found instructive, there was kind of a window left open where it says that an alter ego could be a mere factual determination that the alter ego is actually, should have been brought in as almost like a true employer in the original case. And I think that Futura leaves that open and we can sneak in that door to say that N&D, that's what we're asking, that they make a factual determination based on everything that we put in, that they are DNN, that they're parallel companies and that they had so much overlap that they're just walking along as if they're separate. But really when you look behind that, which because we're also dealing with the federal law here, we can look at the purpose behind Congress. And Congress started ERISA to say that pension benefits, they have to be preserved. So if you look at the purpose behind ERISA, ERISA allows you to kind of tear away at the entities and what they legally say that they are and look behind that and not so pay so much attention to the corporate form. So here, if we look at all the factors that show how they were joined, then you can say that they are an alter ego, therefore they are DNN, therefore they are responsible for that original judgment based on all the factors that Belmont lays out. The key distinction with Peacock from your point of view is that the complaint alleges that this entity is an employer under ERISA who violated ERISA. Correct. And so long as that's the case, you are relying on a cause of action that ERISA gives and therefore there's federal question jurisdiction. Right. And Peacock was a civil conspiracy, the second case was a civil conspiracy and fraudulent transfers that happened right after the ERISA plan had actually terminated. Whereas we're saying that the facts that we're showing went on at the exact same time and these companies were operating at the same time in the same building with the same family members doing the same thing in parallel. One company was a new company, one company was not. And that's the connection that we're saying with Peacock. So just so I understand, certainly if you had filed suit against both at the same time. Yes. You would have explained why you've got two entities that you're claiming are the employer. Correct. And nothing in ERISA would prohibit you from doing that. Correct. You could say alter ego doctrine explains why I'm allowed to sue both at once. Correct. As it happens, you're suing them seriatim. Yes. So I don't know whether, I mean maybe these just aren't in the case, but just so I understand how this litigation would play out. I mean I would think there's going to be collateral stock issues and indispensable party issues and all that is possible. Issues in the case as you proceed against the second company since you didn't bring the action against them originally. I don't say that means we don't have federal question jurisdiction or you don't have an ERISA claim, but wouldn't all those doctrines potentially be of some relevance? Otherwise, it just seems odd that you can, for no reason given, unless there's a concealment claim or something, that you could just sort of seriatim do this with employers. There's no concealment claim. What we do is when we have a company that is withdrawing from a pension fund, we send them a questionnaire which we're allowed to do under ERISA and we ask for information. We ask for companies under common control, but under common control with withdrawal liability, that is a term of art that refers to IRS regulations of 1.414. And the cases here have started to talk about common control in other circuits, but under withdrawal liability we do ask in that questionnaire, do you have any companies under common control? When they respond no, then we proceed usually with a judgment and then we do post-judgment discovery. So that's what happened in this case, and then we discovered that there was this other company connected to this company. And we did file a window complaint here, which is the subject of the motion to dismiss, but we also have filed a second window complaint. And all those complaints were was as we moved through discovery and found out that there were more companies and more alter egos, we kept on lending to just add those new entities. Let me see if I understand this correctly. You have a judgment against company A? Yes. Okay. And you're claiming basically that you can sue company B. No, you're claiming enforcement of that judgment against company B because company B in effect is company A. I wasn't enforcing it. I'm saying that I'm trying to hold company B also responsible for the judgment against company A. It's enforcement of the first judgment. You're not asking for a new judgment. You're asking for enforcement of the first judgment. It's called enforcement jurisdiction as I understand. I disagree. This is an enforcement jurisdiction case. It's a separate claim to hold another company liable as an alter ego for withdrawal liability. Are you asking for a new judgment against this company that they are liable as an employer? I didn't specifically say that in the complaint. What did the complaint say? What did the complaint request? The complaint requested that they be held liable for the current judgment, I believe. Well, isn't that what I asked? Maybe I didn't. I'll ask him again then. I just believe there's a slight difference there, that even though the withdrawal liability has already been reduced to a judgment, which we're allowed to do when they default. So typically, withdrawal liability, you can only ask for interim payments if, say, the company proceeds to arbitration, which this company didn't because they defaulted. So then in the default, we're allowed to sue for the entire amount as well as interest, attorneys' fees, and liquidated damages. So that was all reduced to a judgment. So we asked for that amount because it's actually more than the withdrawal liability would be. So there's stuff added in there. So in trying to hold them to it, we want them responsible for the judgment that was already put in for the withdrawal liability. Can I ask you something? Suppose you just styled this as a state law claim under alter ego. I don't know, is there anything called alter ego? Suppose you just wanted to do an enforcement, a collection action on a judgment, just like as in Peacock. Would it be possible under state law to have brought a collection action of that kind under state law? It would be, but then I would be required in state court to be ironing the federal common law of alter ego in ERISA. So we believe that the ERISA alter ego doctrine is already established in federal common law because it comes from the NLR. Well, that's what I'm wondering. I thought Peacock suggested, at least it doesn't directly say it, but it suggests that it is possible to bring a collection action on an ERISA judgment that is not governed by ERISA, because that's why they dismissed the claim as a state law claim for which there was no federal question of jurisdiction. So in Peacock they're saying that he could have went to state court and brought a collections judgment? Is that what you're asking? Effectively, he was making a bail-piercing claim, and they say that whatever that is, it's not an ERISA claim. And they're not suggesting that there's federal question of jurisdiction because it brought ERISA preemption. They don't suggest any time you try and collect on an ERISA judgment, it's a federal question. Right, but I'm saying that this is a claim for collection of withdrawal liability to NMD, which is a separate... Correct. I'm just wondering, this is like our theme today, form versus substance. You've styled it that way. You said, I'm saying you're an ERISA employer. But in fact, to decide this case, the adjudicator won't need to look at any of the ERISA liability, because what you're really saying is, pay up for this judgment because of a relationship you have to ex parte. And I'm just wondering, under state law, is there such a thing in collecting a judgment where, forget it's an ERISA claim, I just want to collect on a judgment, can I say the reason this person also has to pay is because they're an alter ego of A? And I'm just a little curious whether that automatically makes it a federal question or is a cause of action to ERISA. I don't know, but in this case, I would then have to go to state court and argue ERISA alter ego, not state alter ego. Because under ERISA, you can only be responsible for withdrawal liability if you're an employer. I see. So that's why you say this is an ERISA claim. Exactly. Because you have to make that proof. And I'm saying. That they're the kind of entity that is an employer under ERISA. That falls under ERISA to be responsible for the withdrawal liability. And I'm saying that they're an employer because they are an alter ego. Can I just touch, I know I'm out of time. Your time is up. Okay. Thank you. May it please the court, my name is Oleg Nikowishin. I represent Laurent Larry Duhamel and his wife Elizabeth. With respect to these two individuals, the appellant, the fund, no longer is claiming that my clients are alter egos of DNN. They've admitted so in their brief on page 429. Likewise, in their motion for Rule 60, Relief, and Rule 59, they no longer claim that Larry Duhamel and his wife Elizabeth are alter egos. The only claim remaining against my clients is allegedly for a fraudulent transfer that occurred some 11 years prior to this withdrawal liability becoming effective. If I may take a moment to give the court maybe some sort of clarity with respect to these names and the letters, just so that it makes sense. Larry and his wife started a business approximately 50 years ago. They named it DNN after their children, David and Nancy. Approximately 20, 25 years ago, the son David and his sister Nancy started a similar business. They called it NND, Nancy and David. Just to kind of make it clear for the court. Larry's business was what they call less than truckload LTL business. He delivered short haul, Rhode Island, Massachusetts, and Connecticut. David, when he started this business approximately 25 years ago, started a business which was nationwide, full trailer trucks going to California, Chicago, and Texas. So that the only issue that remains with respect to my client that's not addressed in the initial argument is that there was a fraudulent transfer that occurred when Larry approximately 11 years, 13 years ago now, decided to withdraw the assets that he had in a warehouse that he built approximately 30 years ago with his own money. He and his wife put up this warehouse. It was a subcontractor-ass corporation. He decided to withdraw the money from the warehouse by selling it basically to a company that his son formed. And somehow there's a claim of fraudulent transfer as a result of that. It goes beyond dispute, legal dispute, that a fraudulent transfer claim has to be made within four years of the transfer. The fund is claiming that because there are monies being paid on a mortgage since then for the last 11 years, somehow that statute of limitations of four years transgresses and just keeps on going forever. So I guess there will be no statute of limitations with respect to this fraudulent transfer count three. Now originally the fund claimed in this count three as a fraudulent transfer that there was supplemental jurisdiction because count two against my clients for alter ego of their own corporation, DNN, gave this court subject matter jurisdiction over my clients. So count two was for alter ego. Count three was for fraudulent transfer. Since then they've dropped count two completely. So the question is, is there subject matter jurisdiction over my clients who are technically no longer part of this claim? There's no subject matter jurisdiction over my clients, Larry and his wife Elizabeth. So in their brief they're stating now that it's no longer supplementary jurisdiction over my clients for fraudulent transfer. Now it's a collection action therefore that gives this court subject matter jurisdiction. That's exactly what Peacock stood for, can't do it here, go to state court to collect against these clients. But how do you square that with the Efferson case that they cite in their brief from the Second Circuit? They say, says, where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted creditors to pursue under the ancillary enforcement jurisdiction of the court the assets of the judgment debtor even though the assets are found in the hands of a third party. Your Honor, it's still a fraudulent transfer claim that's been time barred long, long ago. No, I understand that. I'm just on the federal question jurisdiction. When was Peacock decided? After 2001? 2005, I believe. 2005? Yes. So is the idea that the Second Circuit case has just been superseded by... Yes, Your Honor. Slightly changing the subject from fraudulent transfer. Are your clients somehow related to the original company? My client started that company approximately 50 some odd years ago. And they continued... Well, he kept the company going until... He's in his 70s, he decided to retire, and he waited until his last employee retired. Once the last employee retired, he closed up shop. You know, he paid... This is not a claim for non-payment of benefits to the client. For 50 years, he paid every penny, every month, on time. He never knew about a withdrawal liability when he closed up shop when he turned 72 or 73 years old. But my question is directed at whether they were owners, officers, directors, and employees of both companies. Yes, the husband and wife were owners and officers of DNN, the original company. And then when his son started the company some odd years ago, 20 some odd years ago, the son put the mother and father as officers of that new company for purposes of getting a group health insurance, to help pay for the parents' insurance. And both companies had the same place of business? Your Honor, yes, just as my colleague and I share office space, they shared common expenses, they shared rent based upon square footage, they paid their utilities depending on how much each company used utilities. Same telephone? There were, I believe, seven lines. They all had the same telephone number? Yes, Your Honor. There were seven lines, one main line, and then it just progressed on to... Shared insurance policies also? Yes, Your Honor. And same utility bills? Well, they shared those expenses, Your Honor. Okay, thank you. I guess the opposing counsel can respond. You're saying that with respect to your clients, there's no longer a claim of alter ego, correct, Your Honor? There was count number two, and that's no longer pursued, and I believe it's stated on page 29 that that's no longer pursued. The only count that remains is the fraudulent transfer count three. And these are separate suits then? There's a suit against... It's all part of the same... Well, if it's all part of the same suit, and the ERISA claim is good as against the company, could your claim be then pendant to that? The fund is no longer claiming that... I know, not against you, but they are claiming that... Aren't they claiming still that the company... Yes, my company, Your Honor. Well, first of all, I don't want to look at the company. Right, that's what I'm saying. They are claiming that the other company is an alter ego. I forget if it's a D, an M, or N, or B. Right. They do. Yes, so they're agreeing that, and it's in the suit. Are you in that same suit? Yes, it's count three fraudulent transfer... Against you as separate defendants? Yes, Your Honor. In the same action? In the same action. What are you asking us to do with respect to your claims? Well, obviously, I've formally, to this court, judgment's decision to dismiss, not just because of statute of limitations, but also the judgment on the pleadings, as well as 12b-6. With respect to count three, there's no basis for maintaining count three in this lawsuit. Well, why wouldn't it be pendent to the federal claim that is in the lawsuit against the other defendant? Well, first of all, the statute of limitations... No, that's pendent. You're trying to say there's no federal question of jurisdiction over your claim. No, I'm just trying to understand why that would be... I mean, my clients, Larry and his wife, there is no hook to bring them into this case, according to Peacock. They're separate individuals. If they have a claim against NMD, which they apparently are pursuing, there's no hook to bring in my clients and saying, well, these other third parties are somehow responsible to be part of this case. They have to go to state court, according to Peacock, and try to collect their case against them there. I'm sorry, my time is up. Thank you. We'll read you brief. Mr. Mitzen, good afternoon. Good afternoon, Your Honor. May it please the Court, my name is Robert Mitzen. I represent NMD Transportation, Inc., and also Jed Realty Associates, LLC. Judge, preliminarily, I'd like to just make a comment that essentially this is a debt collection action. This complaint is fashioned as a debt collection action. I understand that there was some colloquy as to whether it could be bootstrapped into something different in order to implicate the federal law, but let's really take a look at it. It's a debt collection action in the sense of collecting a judgment against Employer A, and they're claiming that Employer A and Employer B are the same thing. So, am I correct? You are correct, Judge. And what does that mean in terms of jurisdiction? Why is it their jurisdiction to do that? Several reasons, and as the District Court correctly pointed out, you have a complaint. You have a complaint that is brought under ERISA, and the complaint is an effort to collect a default judgment against alleged alter egos. This is Count 1, Judge, and the alleged alter ego is NMD Transportation, and they are looking to enforce a default judgment against them and hold them liable under this theory of alter ego. Count 5 refers to Jed Realty Associates. They allege that Jed Realty Associates is an alter ego of NMD and derivatively, therefore, responsible or liable for the default judgment. Now, when the District Court judge took a look at this, she reasoned that, well, she noted that the complaint does not state any direct ERISA violations committed by any of the parties. She correctly pointed out that the parties before the court today were not made parties to the initial case where the withdrawal liability was entered by the court under default. That was an ERISA judgment, right? Yes, sir. All right, so they're trying to enforce an ERISA judgment. They are trying to enforce... Based on the fact, or the claimed fact, I should say, that A and B are the same, that for all practical purposes, B was already in A. I wish it was that easy to understand, Judge, but it's really not, because, like I say, Count 5 alleges that Jed Realty is an alter ego of NMD and, derivatively, is, therefore, liable for this default judgment. So, Judge, the threshold issues, I don't think we necessarily get to, but the threshold issues are whether the mere allegation of alter ego triggers or supports federal jurisdiction, and, secondly, whether the mere allegation of alter ego is sufficient to state a cause, to state a claim under which relief can be granted. I assume you're familiar with Futura? Yes, Your Honor. Why doesn't that apply here? Actually, Futura supports Peacock, and Futura took the position that these are separate matters because they involve different theories, different parties, and different evidence. So, when this First Circuit ruled in Futura, it upheld and expanded the Peacock case, Judge. Now, didn't Futura say that there's a slight window, which opposing counsel argued, a slight window that might apply here? I mean, you could view Futura as sort of a failure to establish the alter ego liability here, saying we have all of this evidence supporting the challenge to the subject matter jurisdiction of the district court. The district court never even looked at it. And so this case might indeed be that sort of narrow window that Futura acknowledged. I don't agree with my sister's position that this is the narrow window under which she can crawl through in this case because, Judge, I don't think we necessarily get to subject matter jurisdiction if we look at the travel of this case. The travel of the case involves a complaint and then a First Amendment complaint. Neither set forth any universal violations, nor do either complaint set forth the requisite temporal allegations, specifically when the alter ego conduct took place. We have a company that was defaulted in business for 50 years. We have a very generic allegation of alter ego conduct. The complaint does not state when that took place. So that's what the trial justice picked up on. Well, yeah, and they want a chance to remedy that defect. And the district court basically said, I'm not going to give them that chance because it would be futile to do so in light of the subject matter jurisdiction problem. That's correct, Judge. She said it would be a futility because the proposed Second Amendment complaint merely added parties, did not deal with the deficiencies. And so before we get to the threshold questions of failure to state a claim or whether alter ego triggers, implicates federal jurisdiction, we have to consider whether the trial justice abused her discretion in disallowing a second motion to amend a complaint. Well, if she was wrong on the subject matter jurisdiction, then her premise of futility was incorrect. Judge, if you make that, if we take that position for purposes of this reasoning, then we have to, we then do go to subject matter jurisdiction, and we heavily rely upon Peacock. And can I ask you about that? Because suppose the suit had been brought before any judgment had issued against all of you, save for the two who were not being alleged to be alter egos. And the theory as to why there were so many people present as defendants in the risk of claiming Trump, was that it had many alter egos. That's a viable thing to do under ERISA, and we would apply ERISA alter ego law, correct? Correct. Okay, so what is different about the case I just posited and this case, other than rather than doing that all at once, they're now realizing that same ERISA alter ego theory that they co-brought that they're bringing now. One possibility might be there's some doctrine out there that gets in the way, but I don't see why it would be federal question jurisdiction, because it's the same ERISA claim that they would have brought up time one, they're just bringing it late. No, Your Honor, that's not. Okay, so what's wrong with that? Sure. The initial action was based upon a withdrawal liability. That is a direct ERISA violation. The withdrawal liability, apparently the fund was underfunded, and they make demand upon the former union employer to make their pro-rata contribution. So that initial action was proper under ERISA. But I'm going to ask you, couldn't it have also been brought at that time against the other defendants, including your client, on the theory that you were responsible for withdrawal liability, because of your alter ego? Yes. Okay, so now I don't understand why it stopped being ERISA action when instead of bringing it at time one, they brought it at time two. Well, under the holdings of Peacock, it is clear. Peacock's clear that they did not assert that there was an ERISA violation. In fact, that's the whole thing. There was no claim under ERISA that there was a violation. The only claim was that they weren't trying to apply ERISA law. They were just saying bail piercing. Judge, if I may. Yes. You're asking me if these non-parties were brought before the court in the initial action, wouldn't that be proper jurisdiction? Yes, but not under ERISA. Why? It would be proper jurisdiction under the court's ancillary jurisdiction. No, they wouldn't have been trying to do anything other than claim that they were an employer under ERISA. And the body of law that we look to was the ERISA alter ego law that we recognize. I don't know if it was Belmont or whatever. Belmont's one of the cases. That's an ERISA case. That's a construction of ERISA law. The trial justice properly cited in her decision that this contention that these alter egos are also employers, it's brought up after the fact that this was not part of the original complaint. And she was concerned that they were trying to bootstrap the status of these alter egos. So, Judge, we rely on PCOT. We think it's very instructive, as we do feel the same way about Futura, that this complaint did not allege direct ERISA violation, did not set forth requisite temporal allegations, and the ruling in PCOT is that ERISA does not allow for the imposition of liability of an ERISA judgment against a third party. This is a state court debt collection action. It's not a third party. It's the same party. Again, it's not an alter ego. It's not a third party. It's the same party. That's the logic of their theory. It is their theory, Judge. Well, what PCOT says is that alter ego does not provide a support for federal jurisdiction. No, it doesn't. It says veil-piercing does not. And the theory of why you're an alter ego is based on Belmont's factors, which is ERISA law. In fact, what's puzzling is one of the reasons it's said that they can't meet the alter ego standard is based on the Belmont factors. It seems odd that you can both not have federal question jurisdiction, and it's futile because federal law tells you you couldn't meet that standard. That seems to suggest that what we're doing is applying federal law in evaluating their alter ego claim, which suggests it must be a federal question issue. Your Honor, you're correct about PCOT dealing with veil-piercing. Veil-piercing, alter ego, these things kind of become synonymous in some analysis. And that's what Futura brings out, that you're really talking about the same equitable theory. And so when I state as a proposition that PCOT maintains that an alter ego liability does not implicate federal jurisdiction, that is the strongholding of PCOT, and we rely on those rulings. Thank you, Your Honors.  Anything further? Thank you, counsel. Thank you, sir. Just a couple of points. On page 20, the district court corrects herself in her footnote that she was mistaken. We put that they were an employer in paragraph 6 of the complaint. In her August decision, she said that was a new theory of liability. We pointed it out in our motion for reconsideration and relief from judgment, and she corrected herself. In footnote 4, we explained she was correct and that I was mistaken. In footnote 2, we stated that he had made no factual allegations. We allege they were an employer in the complaint in paragraph 6. Secondly, PCOT was decided in 1996. Epperson was in 2001, so Epperson has not been removed. How is Epperson consistent with PCOT? Well, it's not consistent with PCOT. It brings them in as pending jurisdiction. If the NED claim stands under subject matter jurisdiction, then the other counts in my complaint come back to me. Yeah, no, I understand. Epperson just seems to say that any collection action under a federal court judgment is automatically something that a federal court has jurisdiction over. Oh, if it's a fraudulent transfer of original assets. So the fraudulent transfer claim has to do with assets of DNN that were transferred. So Epperson is limited to a fraudulent transfer claim? Well, I just want to say, PCOT says it was not an ERISA action. Right. Therefore, it must be a state law action. Yes. And then they say since there's nothing that it's pending to, we dismiss the veil-piercing collection attempt. Yes. Because there's no federal question of jurisdiction. Yes. Okay, Epperson says if you're ever trying to collect on a federal judgment, courts do have ancillary jurisdiction over that. I'm just referring to Epperson for count three. I understand. Okay, so count three is the fraudulent transfer. So because they're assets of the original judgment data, Epperson says that you can go after them and you have federal jurisdiction. Do you believe that a statute of limitations has run? Well, we believe that there's still payments on mortgage on that mortgage. What they did is they took the building and then they got a mortgage. And then they assigned the mortgage to themselves, like the Hamels did, who are the parents of the son that owns the second company. Well, does a statute of limitations run from when the transfer is made, or is it a continued violation? We are going to make an argument that it's a continued violation. Is there any case that holds to such a thing? There's a case in Rhode Island that I cited that says that the term asset is a broad term. So we were going to make the argument, if we got to that point, that the ongoing payments are the fraudulent transfers. That continues kind of like from the poisonous tree. Epperson doesn't help you unless they're the judgment debtor, right? And you're not asserting that they are the judgment debtor. DNN, I understand, but that you have your business. But as to the... I mean, you can't just own DNN. But you are not claiming that you have a judgment against DNN, either one? Correct. Okay, so they are not the judgment debtor. Correct. So Epperson doesn't help you because it applies to collection actions against the judgment debtor. I see your point, yes. Okay. Did you want to just talk about what you failed to say, Clayton? No, your time is up. Okay, thank you very much. You're welcome.